MARYLAND CASUALTY COMPANY *vs.* JOHN P. JACKSON & another.

Bristol.    March 27, 1918. — May 25, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Insurance,* Liability.    *Practice, Civil,* Charge to jury, Requests and instructions. *Attorney at Law.*

At the trial of issues framed in a suit in equity brought by an insurance company against one, insured by it against liability arising from accidents in which his motor vehicle was involved, and an attorney at law alleged to have been in collusion with the insured to defraud the plaintiff, to enjoin the insured from maintaining an action of contract upon the policy, a material question was, whether the insured, by false testimony and by fraud either alone or in collusion with the attorney at law and a person injured in a collision with the insured's motor vehicle, had defrauded the insurance company.    There was evidence tending to show that the defence of various actions by the injured person against the insured had been wholly in the charge of attorneys employed by the insurance company and that the insured had not consulted nor retained counsel of his own therein; that the attorney, who was the person alleged by the company to have been in collusion with the insured to defraud the company, represented the insured in various matters not related to the litigation as to the accident caused by the motor vehicle, and finally took charge of the action of the injured person against the insured, and also was the insured's attorney in the action upon the policy against the company.    The judge presiding at the trial charged the jury in substance that the attorney had a legal right to represent the insured in matters unrelated to the action against him by the person who was injured in the collision with the motor vehicle and to represent the injured person in that action; that "we are not dealing with the question of propriety or impropriety here.    We are dealing simply with legal questions in this case, and I don't say that it was proper or that it was improper.    I simply say that it wasn't illegal." *Held,* that there was no error in the charge.

It also was *held* that the instructions above quoted did not preclude the jury from considering the propriety of the attorney's appearance in the case or any inference of collusion therefrom.

It further was *held* that it was not fairly open to the plaintiff to argue as to such instructions that "the stamp of approval given by the court as a matter of law to the action of" the attorney "prevented the jury from considering this very vital element [of collusion] in passing upon the contentions of the plaintiff."

An exception to the conduct of the judge presiding at a trial of the issues in the suit above described, in reading to the jury at the close of his charge requests previously presented to him by one of the parties, with comments upon them as he read them, instead of covering the subject matter of the requests in the course of his charge, was overruled.

BILL IN EQUITY, filed in the Supreme Judicial Court on November 3, 1916, alleging in substance that the plaintiff had insured the

defendant John P. Jackson against loss from liability for damages caused by motor vehicles owned by him; that one Manuel Medeiros received personal injuries in a collision with an automobile belonging to Jackson driven by one Cuffe, and, as a result of legal proceedings against Jackson, recovered a judgment of $4,200; that, upon notice from Jackson, he had been defended in such proceedings by attorneys employed by the plaintiff; that the attorney for Medeiros at the final trial of his action was David R. Radovsky, Esquire, who at the time of the trial was the "personal counsel" for Jackson "in all matters;" that Jackson, in collusion with Medeiros and Mr. Radovsky, deceived and defrauded the plaintiff by testifying at different times differently upon the issue, whether Cuffe was using the automobile for his own purposes or for Jackson's at the time of the injury to Medeiros, his testimony at the final trial favoring Medeiros; that Jackson had assigned his rights under the insurance policy to one Louis Altshuller, also a defendant; and that Jackson had brought an action at law upon the policy against the plaintiff. The prayers of the bill were that the fraud of Jackson toward the plaintiff be established and that Jackson and Altshuller be enjoined from prosecuting any action against the plaintiff upon the policy of insurance.

Jury issues, described in the opinion, were framed and were sent to the Superior Court, where they were tried before *Dubuque*, J. The material evidence also is described in the opinion. The answers of the jury were favorable to the defendants. The plaintiff alleged exceptions.

*A. T. Smith,* for the plaintiff.

*D. R. Radovsky,* for the defendants.

DE COURCY, J.   One Manuel Medeiros was knocked down and injured by an automobile on North Main Street in Fall River in April, 1911. Shortly afterwards he brought an action in the local district court against John P. Jackson, the alleged owner of the automobile, to recover for his injuries; and Charles Cuffe, the chauffeur, was arrested for failing to stop after injuring a man. After trial, Cuffe was discharged; and in the civil action there was a finding for the defendant. Medeiros appealed his case to the Superior Court, later discontinued it, and brought a new action in the Superior Court for a larger *ad damnum*. This action re-

sulted in a verdict of $4,200 in favor of the plaintiff, Medeiros, in February, 1916.

Jackson had a policy of liability insurance, issued by the Maryland Casualty Company, and that company conducted the defence in both courts, by its own counsel. After the trial the casualty company refused to pay the amount of the verdict, and an action was brought by Jackson on his policy. The present suit was filed in the Supreme Judicial Court on November 3, 1916, to restrain the prosecution of said action on the policy. Certain jury issues were framed and were tried in the Superior Court, the material ones being as follows:

"1. Did John P. Jackson at the trial of the case of Manuel Medeiros against him in the Superior Court for the County of Bristol give testimony that was knowingly false for the purpose of fixing liability against himself so that the Maryland Casualty Company would be obliged to pay money under the terms of its policy or contract with said Jackson?"

"2. Did John P. Jackson, either himself or in collusion with another or others, deceive the Maryland Casualty Company or its attorneys as to the testimony he proposed to give at the trial of the action of Manuel Medeiros against him in the Superior Court for the County of Bristol, and did he give testimony materially different from that which he represented to said company or its attorneys that he would give at said trial for the purpose of fixing liability against himself so that the Maryland Casualty Company would be obliged to pay money under the terms of its policy or contract with said Jackson?" To each of these questions the jury answered, "No." The case comes before us on the plaintiff's exceptions to certain portions of the judge's charge, and to the giving of certain rulings requested by the defendant.

The portion of the charge specifically excepted to was as follows: "Something has been said about Mr. Radovsky's coming in the case, and being counsel for Dr. Jackson in some four other suits then pending in the Superior Court. It does appear that those suits were for some family matters, estates as I understand it, and that they were not connected with this litigation. Legally Mr. Radovsky had a right to appear in another suit against the doctor, even though the doctor was his client in a particular suit. We are not dealing with the question of propriety or impropriety

here. We are dealing simply with legal questions in this case, and I don't say that it was proper or that it was improper. I simply say that it wasn't illegal. Mr. Radovsky had a right to appear in that case for Medeiros if Medeiros hired him and wanted him to, and it does appear that he consented to come on condition that Judge Cook was willing that he should come, or should consent, or should ask him to come, and after conference together they agreed that he should come and try the case." In view of the fact that the casualty company took full control of Jackson's defence in the district and superior courts, and employed its own counsel, and that apparently Jackson never consulted or retained counsel of his own in the cases, we find no error in the portion of the charge quoted. Nor does it seem fairly open to the argument that thereby the jury were precluded from considering the propriety of Mr. Radovsky's appearance in the case, or any inference of collusion therefrom; or that "the stamp of approval given by the court as a matter of law to the action of Mr. Radovsky prevented the jury from considering this very vital element in passing upon the contentions of the plaintiff."

The testimony of Jackson at the trial referred to in the issues to the jury did not relate to the due care of Medeiros, the negligence of the chauffeur, or the extent of the injuries. The alleged false statement was his testimony that he expected Cuffe to meet him with the automobile at the railroad station, at about the time of the accident, and that it was customary for Cuffe to meet him on his return from Boston. This had a vital bearing on the issue whether Cuffe was using the automobile on business of his employer at the time. Jackson's testimony in the Superior Court on this issue seems to have been in flat contradiction of what he testified to in the district court. Nevertheless the jury were justified in finding on the testimony of other witnesses, that he told the truth in the Superior Court, and in answering the issues accordingly.

While the trial judge well might have covered the subject matter of the defendant's requests in the course of his charge, instead of emphasizing their argumentative effect by reading them at the close; (especially those relating to the second issue) we cannot say that the judge erred in giving them as he did, with comments.

*Exceptions overruled.*